Darrell J. York, (14408)
Wasatch Defense Lawyers
299 South Main Street, 13th Floor
Salt Lake City, UT 84111
Telephone: (661) 478-9640
djylaw@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | DEFENDANT'S SENTENCING |
| | : | MEMORANDUM AND POSITION |
| vs. | : | REGARDING SENTENCING FACTORS |
| NICHOLAS KINDLE, | : | CASE NO.: 2:24CR00422-001 AMA |
| | : | |
| Defendant. | : | The Honorable Ann Marie McIff Allen |

COMES NOW, the Defendant, NICHOLAS KINDLE, by counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and Local Rule 32-1(b)(2) hereby files his sentencing pleading. Mr. KINDLE respectfully states that he has reviewed the Probation Office's Pre-Sentence Investigation Report ("PSR"), does not have any objections to the PSR, and states his position with respect to sentencing factors.

## Introduction

Mr. KINDLE's guideline range is 37-46 months incarceration. He does not have any prior criminal convictions. He has demonstrated total acceptance of responsibility for his actions and is remorseful concerning his conduct. In addition, Mr. Kindle

1

cooperated with the government from the day federal agents executed a search warrant at his residence and he provided the government with substantial assistance in the case against the co-defendant, DAVID COLE.

## Procedural Background

On December 30, 2024, Nicholas Kindle was named in a two-count Information. Count 1 charged Conspiracy to Convert Property of Another by an Officer or Employee of the United States and remove Property in Custody of the United States, in violation of 18 U.S.C. § 371; Count 2 charged Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), punishable under 21 U.S.C. § 841(b)(1)(C).

On March 13, 2025, the defendant pled guilty to the two-count Information. Count 1 charged Conspiracy to Convert Property of Another by an Officer or Employee of the United States and remove Property in Custody of the United States, in violation of 18 U.S.C. § 371; Count 2 charged Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), punishable under 21 U.S.C. § 841(b)(1)(C).

## The Sentence Recommended by the Guidelines

The sentence recommended by the United States Sentencing Guidelines is 37-46 months. Consideration of the circumstances of Mr. Kindle's offense, his history and characteristics, his cooperation and assistance he provided to the government, and the purposes of sentencing expressed by the §3553(a) factors, demonstrate that a 3 level downward departure from the sentencing guidelines is sufficient, but not greater that

necessary to comply with the directives of § 3553(a), and it is the defendant's understanding the government agrees and makes this recommendation in their §5K1.1 motion.

**The Nature and Circumstances of the Offense as They Relate to the Sentencing Factors**

Mr. Kindle was a Special Agent with the Department of Homeland Security ("DHS") and assigned to the Salt Lake office. The co-defendant, DAVID COLE, was also a Special Agent with the DHS. Mr. Cole was senior to Mr. Kindle with respect to his employment with the DHS. Mr. Cole was also Mr. Kindle's mentor and partner.

Mr. Cole and Mr. Kindle started seizing large quantities of alpha pyrrolidinohexanophenone (a/k/a Alpha-PHP or "bath salts"), a Schedule I controlled substance. Mr. Cole and Mr. Kindle were not familiar with this drug, and most other agents were unfamiliar with this drug. Both Mr. Cole and Mr. Kindle began to conduct controlled deliveries of these bath salts and made numerous arrests for the possession and distribution of the bath salts. The two agents became the bath salt experts in the United States and any seizures of bath salts from any ports of entry were forwarded to them. Eventually, Mr. Cole came up with a plan to sell bath salts to one of their informants and Mr. Kindle went along with the plan. Mr. Kindle has outlined his involvement in minute details in his letter to the Court and this letter has been filed along with the PSR.

The confidential informant eventually notified the FBI, through his attorney, of the sales of the bath salt. The FBI set up surveillance of both Mr. Cole and Mr. Kindle, wired the informant, and the informant did controlled buys from both Mr. Cole and Mr. Kindle.

On December 4, 2024, and December 5, 2024, agents executed a series of warrants. Those warrants authorized agents to search Mr. Cole, Mr. Kindle, their residences, their government vehicles, their government phones, their HSI cubicles, and a safety deposit box. The warrants authorized agents to search electronic devices, lock boxes, safes, etc., found within the residences, vehicles, and cubicles or on the person of the subjects. During the searches, agents seized bath salts, more than $67,000 in currency, and other evidence. PSR ¶ 52.

The day after the execution of the search warrant at Mr. Kindle's residence, Mr. Kindle retained the Wasatch Defense Lawyers and Darrell J. York to represent him. Mr. York immediately contacted the FBI agent in charge of the case. A proffer session was immediately set for the following day.

Mr. Kindle with his counsel had a proffer session with FBI agents and Assistant United States Attorney Jordan Dickerson from the Washington D.C. office. Mr. Kindle provided detailed information on the entire operation that Mr. Cole and he were conducting.

Mr. Kindle had a second proffer session with FBI agents and the United States Attorney's Office. During this second proffer session, Mr. Kindle agreed to provide substantial assistance with the government with respect to the co-defendant. This assistance is set forth in detail in the government's §5K1.1 motion.

## The History and Characteristics of Mr. Kindle

Nicholas Ryan Kindle was born on November 28, 1978, in Houston, Texas. He is the youngest of five children born to Donald and Cecelia (maiden name Cubillos) Kindle. The defendant's parents remain married and reside in Gilbert, Arizona with their oldest daughter. The defendant's father, age 74, is a retired contractor. His mother, age 71, is a homemaker. Siblings include Donald Kindle Jr., brother, age 52, of Long Beach California, a business owner; Monica Soitton, sister, age 50, of Gilbert, Arizona, an interior designer; John Kindle, brother, age 49, of Denver, Colorado, who is employed in property 17 management; and Ashly Simons, sister, age 42, of Gilbert, Arizona, who is a bookkeeper. Mr. Kindle related he was raised in Texas and in Huntington Beach, California. In describing his childhood, Mr. Kindle related "It was great… My parents argued a bit and even separated for a short time, but I mostly remember family outings… Our parents pushed us to get good grades and to excel in sports." PSR ¶ 82.

The defendant married Michele Erhardt in 2004. Two children resulted from this union to include Kieren (age 16) and Evan (age 13). The marriage ended in divorce in 2013 (verified by divorce decree). The defendant and Michele share custody of the children. PSR ¶ 83.

Mr. Kindle is currently employed by Stover in West Jordan as an operator since May 2025.

Mr. Kindle suffers from anxiety and is currently prescribed Lorazepam. Mr. Kindle has been taking this medication since 2019. A copy of his medical records has been filed in conjunction with the PSR.

## The Need for the Sentence to Reflect the Seriousness of the Offense/ Promote Respect for the Law/ Provide Just Punishment/ Afford Adequate Deterrence to Criminal Conduct

If the court agrees with the 3-level downward departure and incarcerates Mr. Kindle to the 33 months as recommended in the government's 5K1.1 motion, it would be sufficient, but not greater than necessary, sentence to punish him for the offense he has committed. Mr. Kindle broke the law and knows that fair and reasonable punishment is appropriate. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Just., 28 (2006).

Mr. Kindle respectfully submits that a sentence of 33 months of incarceration would reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to both Mr. Kindle and the public. A 33-month sentence would accomplish all the sentencing objectives.

## Collateral Consequences of Conviction

Individuals who have been convicted and incarcerated face penalties beyond those imposed in the courtroom. As they pertain to Mr. Kindle, these collateral sanctions have a profound impact on Mr. Kindle. Mr. Kindle had a promising career with DHS and he threw it all away. The collateral consequences include employment discrimination, loss of employment, and occupational restrictions. In consideration of the

3553(a) factors, this Court should take collateral consequences into consideration, as they serve as additional mitigating factors which support the 33-month sentence. Mr. Kindle has accepted full responsibility for his actions. He understands the breadth of the impact this matter has had and will continue to have on him, his family, and his fellow agents.

### The Kinds of Sentences Available, the Sentencing Range Established for the Offense and the Pertinent Policy Issued by the Sentencing Commission

Mr. Kindle's advisory guideline range is 37-46 months. He is a Criminal History Category I. Nevertheless, the guideline range and the policy statements issue by the United States Sentencing Commission are but two factors for the Court to consider when fashioning the appropriate sentence. The Supreme Court has now decided that judges have latitude to sentence in disagreement with the policies of the United States Sentencing Commission. See generally *Gall v. United States*, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); *Rita v. United States,* 551 U.S. 338 (2007).

**(a) Mr. Kindle Who Exercised Extremely Poor Judgment**

Mr. Kindle dedicated 15 years to uphold the constitution and enforce the laws of this country. He breached his duty due to greed. Mr. Kindle is aware he has pled guilty to a serious charge. He has, without delay, admitted his guilt and expressed remorse for his conduct. . In *Koon v. United States*, 518 U.S. 81, 113 (1996), the Supreme Court said:

"[I]t has been uniform and constant in the federal judicial tradition for the sentencing

judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate. . . the crime and punishment to ensure." Id. At 113.

Mr. Kindle can reasonably be characterized as a "good person, as evidenced by the character reference letters filed concurrently with the PSR. However, Mr. Kindle succumbed to greed, and he exercised extremely poor judgment that has resulted in a federal conviction; and which will undoubtedly impact him for the rest of his life. He is aware of his shortcomings. He knows that his conduct not only affected his life, but also, those who love and care for him, those who look up to him, and all of those who were impacted by his actions, including the DHS. Mr. Kindle is committed to making a better life for himself.

**(b) Extraordinary Demonstration of Acceptance of Responsibility**

Under the advisory guidelines created by *Booker*, the court is not prohibited from Fashioning sentences that relay on § 3553(a) to fit the circumstances of the case. Mr. Kindle, without delay, accepted responsibility for the commission of the offense. He was cooperative with the agents for the United States and admitted his guilt to the agents and to the Assistant United States Attorneys. He retained counsel shortly after his contact with agents and his counsel reached out to the United States Attorney's Office to resolve this matter without an indictment. As set forth in the government's §5K1.1motion, Mr. Kindle provided substantial assistance to the government in the case against Mr. Cole. Mr. Kindle respectfully requests that this court give consideration to these factors and impose the 33-month sentence.

**(c) Recidivism (Not a Future Danger)**

Mr. Kindle poses little to no risk of recidivism. He has dealt with and continues to try to cope with the embarrassment, humiliation, and emotional trauma of being federally prosecuted, convicted and imprisoned for the underlying offense. He never wants to put himself in the position of being charged with any offense.

For all male offenders in Criminal History Category I, the recidivism rate is 15.2%. For those who have a high school education, the rate in CHC I is 10.6%. For those who have been employed, the rate is 12.7%. And for those with no illicit drug use, the rate in CHC I is 10.8%. See U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at Exh. 9 at 28; Exh. 10, at 29 (May 2004). These studies demonstrate that certain aspects of the guidelines overstate the risk of recidivism. Statistics demonstrate that Mr. Kindle poses little to no risk of recidivism. He has strong family support. Mr. Kindle has set realistic career goals to attain vocational training as a HVAC technician and eventually start his own HVAC company. He understands and appreciates the full consequences of his criminal behavior. That alone is an incentive to refrain from any future criminal conduct.

## Conclusion

Mr. Kindle has completely and timely accepted responsibility for his actions, provided substantial assistant to the government regarding the criminal conduct of Mr. Cole, and is extremely remorseful, considering the facts and factors above, Mr. Kindle respectfully asks this Court to impose the 33-month sentence. Such a sentence is sufficient, but not greater than necessary to comply with the sentencing factors. Furthermore, Mr. Kindle respectfully requests the Court recommend he serve his sentence at FCI Yankton because they have a HVAC program. Obtaining vocational training in the HVAC field will enable Mr. Kindle to obtain the necessary training so when he is released from custody he will be able to obtain employment in this field. Lastly, since Mr. Kindle has anxiety and has been prescribed Lorazepam since 2019, and he respectfully request the Court recommend to the Board of Prison that he be screened for the Residential Drug Abuse Program (RDAP) and FCI Yankton is one of the federal prisons that has the RDAP.

Dated: October 15, 2025

Respectfully submitted,

Nicholas Kindle

By: */s/ Darrell J. York*
Darrell J. York (SBN #14408)
Attorney for Nicholas Kindle

CERTIFICATE OF SERVICE

I certified that on this 15th day of October 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF, which will send a notification of such filing (NEF) to the following:

Alexander Byrne Gottfried
United States Attorney's Office
1301 New York Ave NW, Ste 1000
Washington, DC 20530
Telephone:202-615-1286
Email: alexander.gottfried@usdoj.gov

And I hereby certify that I will mail the document by electronic mail to the following non-filing user:

Glenn Manross
United States Probation Officer
351 S. West Temple Street
Salt Lake City, Utah 84101
Telephone: (801) 535-2740
Email: glen_manross@utp.uscourts.gov

By: /s/ *Darrell J. York*
Darrell J. York (SBN #14408)
Attorney for Nicholas Kindle